Selden, J.
The mortgages which were given in evidence by the plaintiff were admitted to embrace, each, some portion of the premises conveyed by the deed from the defendant to the plaintiff, the covenants of which, if valid, bound the defendant to remove all incumbrances upon those premises, beyond $12,400. Any" mortgages, therefore, which were liens upon the premises, were within the terms of the defendant’s cove nant, and properly admissible in evidence against him.
The possession of the $3,000 mortgage, by the plaintiff, with its accompanying bond, canceled, together with the discharge of the mortgage upon the records, some months after the land *482 covered by it was conveyed to the plaintiff certainly amounted to prima facie evidence that the plaintiff had paid the mortgage. ■He was not the mortgagor, but the terms of the deed to him charged all the incumbrances which appear in the case, with the exception of $400 in amount, primarily upon his lands. " The discharge of record is evidence that the bond and mortgage were paid; and their possession by him, canceled, together with the interest which he had in their payment, are circumstances quite sufficient to raise a presumption that he was the person- who made the payment. (Hilliard on Mortg., ch. 16, § 46; 1 Greenl. Ev., § 38; Garlock v. Goertner, 7 Wend., 198.)
The questions in regard to the delivery of the deed were properly overruled. The question, “ was the deed delivered to take effect ?” addressed to the party who signed the deed, I am inclined to think was objectionable, without reference to the circumstances under which the inquiry was made, as calling for a legal conclusion, or for the intention of the party, aside from what was said and done. The other question, “ Was the deed ever delivered ? ” would undoubtedly be proper where a delivery, in fact, was the matter in dispute. But here the defendant’s answer admitted the delivery in fact, and the question in controversy was as to the intention of the parties, or the legal effect of such delivery. The only competent evidence bearing upon that question was what was said and done at the time. This the court decided to admit. The questions addressed to the witness, under the circumstances, called for his opinion as to the legal effect of the conceded actual delivery. That was a question to be decided by 'the court, after all the facts attending the delivery should be proved.
The disposition of the exceptions taken to the rejection of the written agreement, and of the oral testimony offered to sustain the third and fourth divisions of the answer, depends upon the single question whether either of those divisions presents any material issue. The evidence offered would go far to sustain them, and if the issues were material, the evidence should have been received. The court, however, is not required to *483 hear evidence to support immaterial issues. (Corning v. Corning, 2 Seld., 97.)
A fatal objection to the third division- of the answer, as a defence, is, that it shows that the deed was delivered to the grantee, to be held by him in escrow. It is well settled that such a delivery vests the title in the grantee, although it may be contrary to the intention of the parties. (Lawton v. Sager, 11 Barb., 349; Worrall v. Munn, 1 Seld., 229; Gilbert v. N. A. Fire Ins. Co., 23 Wend., 45.) The offer of evidence in support of this division of the answer embraced the additional fact, not alluded to in the answer, that the deed was handed to the plaintiff to be delivered to and safely kept by one of the clerks iñ the register’s office. Whether these facts, not pleaded, if material, were admissible in evidence may admit of some doubt, but I do not deem it necessary to decide that question. If the' answer, in addition to what it contains, had embraced those facts, it would not, in my opinion, have presented a defence. It has been held in one case, that a deed may be delivered to the grantee for the purpose of transmission to a third person, to be held by him in escrow until the happening of some event • when it should take effect as a conveyance, and that such delivery would not be absolute. (Gilbert v. N. A. Fire Ins. Co., 23 Wend., 43.) In that case, the grantee had deposited the deed with the third person in pursuance of the arrangement, the condition had not been performed, and the grantee made no claim under the deed. The case presented merely the ' question, whether the grantor still retained an insurable interest in the premises described in the deed, the nominal grantee tes- • tifying to the terms in which the deed was delivered to him. Limited to its peculiar circumstances, no fault can be found with the decision; but if the grantee had retained the deed, claiming that its delivery to him was- absolute, and in a contest between him and the grantor, parol proof of a conditional - delivery had been offered, I think the result would have been different. If I am wrong in this conclusion, the case discloses an avenue for the overthrow of titles, by parol proof, which • was supposed to be closed by the rule to which it would seem *484 to form an exception. The reason given for the rule excluding parol evidence of a conditional delivery to the grantee applies to all cases where the delivery is designed to give effect to the deed, in any event, without the further act of the grantor. “ When the words are contrary to the act, which is the delivery, the words are of none effect.” (Co. Litt, 36 a.) “ Because then a bare averment, without any writing, would make void every deed.” (Cro. Eliz., 884.) “ If I seal my deed and deliver it to the party himself, to whom it is made, as an escrow upon certain conditions, &c., in this case let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently.” (Shep. Touch., 59; Whyddon's case, Cro. Eliz., 520; Cruise’s Dig. Title, 33, Deeds, ch. 2, § 80.) If a delivery to the grantee can be made subject to one parol condition, I see no ground of principle which can exclude any parol condition. The deed having been delivered to the grantee, I think the parol evidence that the delivery was conditional was properly excluded.
But there is also another ground on which the evidence was properly excluded. “ It is essential to an escrow that it be delivered to a third person, to be by him delivered to the obligee or grantee, upon the happening of some event, or the performance of some condition, from which time it becomes absolute.” (James v. Vanderheyden, 1 Paige, 238.) By the agreement, as offered to be proved, the deed of Bingham to Braman was to be held as an escrow until Braman’s return, “ and then to be given up to Bingham.” A deed thus delivered is not an escrow, although the parties may call it such, because there is no event in which it is to be delivered to the grantee. A deed so delivered, if not so intended, when deposited, to operate as a deed in presentí, could never have any validity, without a new agreement of the parties. (James v. Vanderheyden, supra) If' there were nothing in the case to aid in ascertaining the intention of the parties in making the delivery, beyond the parol proof which was offered, the deed would be held absolute on account of its delivery to the grantee, or it would be held void for want of any delivery: it could not be treated as *485 an escrow. The effect to be given to the delivery, however, is not to be determined by the proof offered alone, but by that, together with the facts appearing in the answer, and the proof already given. From these, the conclusion is irresistible that the deed was intended to operate at once as a reconveyance of the lots to the plaintiff, the title to remain thus until his return, and the conveyance of the other lots' to him, when the deed was to be returned to the defendant. The parties appear to have supposed that the title could be vested1, by the deed, in the grantee, temporarily, to remain there as long as the deed was in the hands of the third person, and could then be re-vested in the grantor, by the return of the deed to him. As' this could not, in accordance with the rules of law, be done, the deed was either void or it took effect as an absolute deed, and vested the title in the grantee. The answer shows that the deed was intended to operate as a conveyance. It was executed in pursuance of the plaintiffs’ request “ that the defendant should reconvéy to the plaintiff the lots described in said-deed, subject to said mortgage of $8,400, to be held as an escrow, until he should return,” &c. The deed from the plaintiff to the defendant, and that from the defendant' to the plaintiff, though bearing different dates, were delivered at the same time, and were obviously both designed to take immediate effect,.the first to vest the title in the defendant, to make his mortgages good, which were also delivered at the same time and the other to revest the title in the plaintiff, subject to the mortgages. Nothing short of a reconveyance would be of any service to the plaintiff, and if the deed did not take effect as a reconveyance, the execution of it by the defendant was an idle ceremony. I am satisfied that the deed must be ■ held to have taken effect as a conveyance, at the time of its delivery, and that the defendant was bound by its covenants. The facts pleaded in the third division of the answer, and offered in evidence under it, therefore, constituted no defence, and the proof of them was properly excluded.
The fourth division of the answer sets up, as an equitable defence, that there was a mistake of $400, in the covenants as *486 to the amount of incumbrances charged upon the property, and asks to have the deed reformed in that respect. The present practice authorizes the defendant to make such a case, and demand affirmative relief in his answer, and also to avail himself of the equitable circumstances as a defence. But neither the answer nor the facts offered to be proved to sustain it, nor both united, make such a case as would justify the Court in decreeing an alteration of the terms of the covenant.
The answer shows that th'e $400 in controversy was the sum paid as a premium for obtaining the loan of $8,000, and the expenses attending it. In the third division of the answer, ■which is referred to. in and made part of the fourth, the defendant says that he “ agreed to pay to the mortgagor ” that sum; and that statement accords with the covenant as it is in the deed. He nowhere alleges that the plaintiff assumed or pro-, mised to pay it, nor does that fact appear in the offer of testimony which was rejected. It is stated that both parties knew that the incumbrances charged - on the lands were $400 more than the sum mentioned in the covenant, but that fact is not at all inconsistent with the position that the defendant was expected to pay the excess. The most that can be claimed on the part of the defendant, in this respect, as the result of what is stated in the answer, and what was offered to be proved, is, that some doubt is thereby created .whether the $400 should not have been included in the exception to the defendant’s covenant. In such a case it is entirely clear that the defendant shows no equitable defence. Courts of equity will decree the reformation of “ a deed or tiontract, only, where there is a plain mistake, clearly made out by satisfactory proofs ” (1 Story’s Eq., § 157), and not then where, as in this case, the mistake, if one was made, resulted from the negligence of the party asking the relief. (Id., § 146, and note 3.) This was not a question for the jury, but for the court, and neither the evidence offered, nor the answer to sustain which it was offered, constituting a defence, the evidence was properly rejected.
The exception to the charge presents the question, whether the plaintiff was entitled to recover anything beyond nominal *487 damages. The terms of the covenant were that the premises were free from incumbrances, except three mortgages, amounting in the aggregate to $12,400. The plaintiff proved that the incumbrances amounted to $12,800, and that he had paid-$3,000. The existence of $400 of incumbrances, in excess of the amount named in the covenant, constituted a breach of the covenant, and entitled the plaintiff to nominal damages, without having made any payment. Such covenant is broken as soon as made, if ever. When the plaintiff paid the excess of $400, he became entitled to recover that amount as damages for the breach. By the terms of the covenant it appears to have been contemplated that the lands were to remain, for a time at least, subject to the lien of $12,400, and it would' not be reasonable to require the grantee to pay that sum, as well as the excess, to entitle him to a substantial indemnity for the conceded breach of the defendant’s covenant. The judgment should be affirmed.
Denio, Ch. J., expressed no opinion; all the other judges concurring,
Judgment affirmed.